UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **ZAMARIA METCALF,** | **CASE NO.:** 21-cv-12242 |
| Plaintiff, | **HON.** |
| v. | |
| **STATE OF MICHIGAN,** **MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES,** **ENNIS CENTER FOR CHILDREN INC,** **PATRICIA NEITMAN,** **ASHLEY CURTIS, and** **STEPHANIE MILLER,** | **PLAINTIFF DEMANDS A JURY** |
| Defendants. | |

Collin H. Nyeholt (P74132)
LAW OFFICES OF CASEY
D. CONKLIN, PLC
Attorney for the Plaintiff
4084 Okemos Road, Ste B
Okemos, MI 48864
(517) 522-2550
collin@caseydconklin.com

_____

**COMPLAINT and JURY DEMAND**

_____

1

**STATEMENT OF THE CASE**

Zamaria Metcalf applied to become a State of Michigan foster care provider. She was denied for the sole reason that she has a physical disability. This plainly violates the law's mandated that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." This suit is initiated to remedy this state of affairs and to compensate Ms. Metcalf for the violation of her rights.

**JURISDICTION AND VENUE**

1. This is a claim to remedy ongoing disability discrimination pursuant to the Americans with Disabilities Act of 1990, as amended, 42 USC § 12131, the Rehabilitation Act, 29 USC § 794, and the Equal Protection Clause of the United States Constitution pursuant to 42 USC § 1983.

2. Plaintiff ZAMARIA METCALF is an individual residing in Flint, Michigan which is within the jurisdictional bounds of the Eastern District of Michigan.

3. The Defendant MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES (hereinafter "MI DHHS" or "DHHS") is an agency of the Defendant STATE OF MICHIGAN that operates throughout the State of Michigan and within the Eastern District of Michigan. This claim centers around the actions of its Division of Childcare Licensing that were directed towards Plaintiff within the Eastern District of Michigan.

4. The Defendant ENNIS CENTER FOR CHILDREN (hereinafter "ENNIS CENTER") is an agency that, among other services, is engaged to perform home placement studies for the Defendant MI DHHS and make recommendations on foster care licensing applications.

Defendant ENNIS CENTER performed the home study, and made the discriminatory recommendation to deny Plaintiff's application at issue in this Complaint.

5. Defendant ASHLEY CURTIS was, at the time of the events described in this Complaint, employed by the Defendant ENNIS CENTER as a worker. She personally performed the home study, and made the recommendation to deny Plaintiff's application for foster care license at issue in this Complaint.

6. Defendant STEPHANIE MILLER was, at the time of the events described in this Complaint, employed by the Defendant ENNIS CENTER as a supervisor. She personally signed and accepted the recommendation to deny Plaintiff's application for foster care license at issue in this Complaint.

7. Defendant PATRICIA NEITMAN was, at the time of the events described in this Complaint, the Director of the Defendant MI DHHS' Division of Childcare Licensing. She personally approved and ratified the discriminatory decision at issue in this Complaint.

8. This claim stems from Defendants' actions towards Plaintiff that occurred in the City of Flint, which is within the jurisdictional bounds of the Eastern District of Michigan.

9. The Court may exercise *general in personem* jurisdiction over the Defendants by reason of their permanent presence within the Eastern District. The Court may exercise *general in personem* jurisdiction over the individual Defendants by reason of their systematic and continuous exercise of activities within same. In the alternative, the Court may exercise *specific jurisdiction* over this dispute because the transaction or occurrence giving rise thereto occurred within, or resulted from Defendants' activities within and directed towards, the Eastern District of Michigan.

10. The Court may exercise subject matter jurisdiction over the claims stemming from federal law pursuant to 28 USC § 1331.

11. Venue is properly laid in this forum pursuant to 28 USC §§ 1391(b)(1) and (b)(2).

## ALLEGATIONS

12. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein

13. Plaintiff was in a car accident approximately 20 years ago at the age of 17. She broke her neck and suffered a spinal cord injury that rendered her paralyzed from the neck down. She is today a quadriplegic.

14. Nevertheless, she remains an active and vibrant person. She can move her left arm slightly to do things such as hold a phone or remove the covery from her face. She gets up every day and gets dressed. She is able to move about independently with the use of a powered wheelchair; she owns two. Her home is fitted and barrier free. In all of her years of disability she has never once had compression sores; she is simply to mobile and active to allow that to happen.

15. Plaintiff's home is well managed and she, and not others, is the one managing it. She has full time, 24/7 assistants in her home. They follow wherever she goes and provide assistance as needed. But, she is without question the one in charge. She keeps a detailed schedule and ensures the household abides by it. She plans the meals. She makes sure the pantry is stocked for the meals and snacks she has planned. She directs the shopping and often comes along herself to

decide what is purchased. Her assistants may act as her hands, but she is without question the brains of her operation.

16. Plaintiff's real passion at the end of the day is children. Her mother was a foster parent. So is her aunt. Plaintiff has become the babysitter for her family and friends. She has had children of ages 8-18, and older, stay with her for extended periods of time over the years. Her home is well suited for them. She also has a niece and nephew who live with her permanently. She has never had an emergency where a child has had to go to the hospital, but she has had band aid injuries. Her assistants are trained by the Red Cross in wound care and she maintains a stock of splints and bandages. When this has happened, the child comes to her for aid and she provides emotionally comfort. Her assistant then puts their training to use and patches the child up. It should be noted that in this arrangement an injured child is probably better cared for than the average household, where they are being attended to by non-ARC trained parents.

17. On or about July 31, 2019, Plaintiff applied for a State of Michigan Foster Care license.

18. Defendant MI DHHS is the agency that administer's the State's foster care management and adoptive services. A significant portion of Defendant MI DHHS' funding comes from the federal Title IV-E program, 42 USC § 671 *et seq*.

19. The Michigan Child Care Organizations Act, MCL 722.111 *et seq*, mandates Defendant MI DHHS to promulgate and enforces rules for the care and protection of children in foster care homes. MCL 722.112(1). The Act, in turn, authorizes Defendant MI DHHS to authorize a child placing agency to investigate a foster home or foster family group home. MCL 722.115(3). At issue in this Complaint is the requirement under the Act that

> [b]efore certifying to the department that a foster family home or foster family group home meets the licensing requirements prescribed by this act, the child placing agency or governmental unit shall receive and review a medical statement for each member of the household indicating that he or she does not

have a known condition that would affect the care of a foster child." MCL 722.115(3).

20. Defendant MI DHHS, pursuant to the statute above, has passed certain regulations in furtherance of MCL 722.115(d). Michigan Administrative Rule 9202(b) provides that persons in a foster care licensee's home must "[b]e in a state of physical, mental, and emotional health that will not impair the care of a foster child." And, Rule 9201(h) provides that the licensee him or herself must be "[b]e of such physical, mental, and emotional health to assure appropriate care of children."

21. The Defendant ENNIS CENTER is a private organization that DHHS contracts with to perform investigations of private homes and private individuals who seek foster care licensing. At the time of the events described in this Complaint, they were acting as child placing agency as that term is used in MCL 722.115(3).

22. As a precursor to that application, the Defendant ENNIS CENTER performed Initial Foster Care / Adoption Home Evaluation which was completed on December 4, 2019 ("the Report"). The Report was written primarily by Defendant Ashley Curtis and was approved, after review, by her supervisor Defendant Stephanie Miller.

23. The first, last, and only question that the Defendants asked was whether Plaintiff suffers from a physical disability. The Report consists of 19 distinct sections, with multiple sub parts that are each supposed to be considered by the evaluator in deciding whether to recommend approval of the license or not. Of those multiple sections and sub-parts, the phrase "*[a]t this time, this section was not assessed by the worker as the licensing recommendation for Ms. Metcalf is denial*" appears **more than 70 times**. The report provides that "*[u]ltimately, Ms. Metcalf relies upon the care of others and therefore at this time has been assessed to be unable to appropriately care for potential foster children.*"

6

24. The recommendation of the Report was denial of Ms. Metcalf's application for a foster care license because, supposedly, she was in "willful" denial of Michigan Administrative Code Rules 400.9201 (d), (h) and (j) and Rule 400.9202(b).

25. Rule 9202(b) provides that persons in a foster care licensee's home must "[b]e in a state of physical, mental, and emotional health that will not impair the care of a foster child" and Rule 9201(h) provides that the licensee him or herself must be "[b]e of such physical, mental, and emotional health to assure appropriate care of children." Rule 9202(d) and (j) provide, respectively, that a licensee must "[d]emonstrate an understanding of the care which must be provided to the children served by the agency" and "[b]e of responsible character and be suitable and able to meet the needs of children and provide for their care, supervision, and protection."

26. By invoking Rule 9201(h) and 9202(b), Defendant Curtis made clear that the denial was based upon Plaintiff's disability. By invoking Rules 9201(d) and (j), Curtis was implying that Plaintiff had not demonstrated a responsible character or an understanding of the needs of caring for children by even applying. Curtis went so far as to state that this supposed "violation" was "willful." Defendant Miller co-signed this statement.

27. On February 20, 2020 Defendant PATRICIA NEITMAN reviewed the Report and approved the denial of Plaintiff's application for the reasons contained therein.

## COUNT I – VIOLATION of the AMERICANS WITH DISABILITIES ACT
*42 USC § 12101 et seq*

28. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

29. The Americans with Disabilities Act provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in

7

or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

30. The Defendants State of Michigan and MI DHHS are public entities as that term is defined by 42 USC § 12131(1).

31. Plaintiff is a 'qualified individual with a disability' as that term is defined by 42 USC § 12131(2).

32. The Michigan foster care licensing system is a program of a public entity. The licensing process is an activity of a public entity.

33. The Defendant ENNIS CENTER was, at the time of the events in this complaint, performing a public function in that it was conducting licensing examinations pursuant to the actions of MI DHHS, a public entity. It is also a place of public accommodation as that term is defined by 42 USC § 12181(7)(k).

34. Plaintiff was excluded from participation in the Michigan foster care licensing system when

    a. Defendant ENNIS CENTER produced a woefully incomplete licensing examination study that omitted over 70 parts because she suffers from a disability,

    b. Defendant ENNIS CENTER recommended that she be denied a foster care license based solely upon her disability and Defendant MI DHHS accepted this recommendation.

35. To the extent that the Michigan Child Care Organizations Act, MCL 722.115(3), permits denial of a foster application because "does not have a known condition that would affect the care of a foster child" it is contrary to the ADA in that it permits denial of persons with disabilities in the foster care system, without consideration of the mitigating effects of adaptive aids upon a licensee's ability to perform the essential functions of a foster parent. Similarly, Rule 9202(b)'s provision that persons in a foster care

8

licensee's home must "[b]e in a state of physical, mental, and emotional health that will not impair the care of a foster child" and Rule 9201(h)'s requirement that the licensee him or herself must be "[b]e of such physical, mental, and emotional health to assure appropriate care of children" likewise permit denial of an application if the licensee himself, or anyone in their home, has a disability *with or without* consideration of mitigating effects of adaptive aids.

36. As written, the Statute and Regulations would permit the denial of a foster care license for virtually *any* protected disability. A *paraplegic* who uses a wheelchair. A single-amputee who uses crutches. A combat veteran who manages his PTSD with medication. The ADA mandates consideration of whether such individuals could perform the essential functions of the program with adaptive aids before excluding them from same. On its face, MCL 722.115(3) violates the ADA because it permits denial of an application for a foster license without consideration of the mitigating effects of adaptive aids.

37. As applied to Plaintiff, Michigan's statute and regulations violates the ADA. The first, last, and only question that the licensing authority asked was whether the Plaintiff suffers from a disability, quadriplegia. The Defendants failed to inquire into the effects of adaptive aids on her ability to perform the essential functions of a foster parent. Had they done so, they would have noted that Ms. Metcalf is able to *verbally* provide emotional support and intellectual guidance to children in her care. They would have noted that, with her 24/7 aids in the home, she is able to provide physical maintenance and response to emergencies. In fact, because of the advanced first-aid training her aids possess, children in her care are arguably safer than children in normal domestic homes where such training is not the norm.

38. To the extent that Michigan Law contradicts the ADAs mandate to provide access to public functions, the ADA preempts. The Court may, and should, permanently enjoin continued enforcement of the statute to the extent it is contradicted by the ADA. *See Larkin v. State*, 883 F.

Supp. 172, 179-80 (E.D. Mich. 1995) (permanently enjoining State of Michigan and MI DHHS from enforcing a Michigan statute that contradicts federal Fair Housing Act's prohibition on discrimination because of disability); *Larkin v. State of Michigan Dept., Soc. Serv*, 89 F.3d 285, 288-90 (6th Cir. 1996) (affirming same).

39. Plaintiff is entitled to a permanent injunction, preventing the Defendants from continuing to violate her rights under the ADA.

40. Plaintiff has incurred attorney's fees in opposing this ongoing violation of her rights.

41. She has suffered emotional pain and distress from the wrongful actions taken towards her herein including shock, frustration, anger, and outrage.

### COUNT II – VIOLATION of SECTION 504 of the REHABILITATION ACT
*29 USC § 794*

42. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

43. 29 USC § 794 (a) provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

44. Plaintiff is an individual with a disability, as that term is defined by 29 USC § 705(20).

45. Defendant MI DHHS receives federal funding, through the federal Title IV-E program, 42 USC § 671 *et seq*, for the operation of the Michigan foster care licensing program.

46. Defendant ENNIS CENTER, through its relationship with MI DHHS, receives funds ultimately paid from federal TITLE IV to perform services for the Michigan foster care licensing

10

program, to perform services for same including licensing application studies like the one at issue herein.

47. Plaintiff was excluded from participation in the Michigan foster care licensing system when

    a. Defendant ENNIS CENTER produced a woefully incomplete licensing examination study that omitted over 70 parts because she suffers from a disability,

    b. Defendant ENNIS CENTER recommended that she be denied a foster care license based solely upon her disability and Defendant MI DHHS accepted this recommendation.

48. For the reasons noted herein, the Michigan statutory and regulatory scheme is invalid as written because it permits exclusion of participation in the foster care system to *anyone* with a disability, without regard to whether they may perform the essential functions with adaptive aids.

49. As state previously, as applied to Plaintiff, the statutory scheme is invalid because it permits exclusion of her participation as a foster parent because she is a quadriplegic, without any consideration of the mitigating effects of adaptive aids.

50. To the extent that Michigan Law, MCL 722.115(3) et seq, contradicts the Rehab Act's mandate to provide access to public functions, federal law preempts. The Court may, and should, permanently enjoin continued enforcement of the statute to the extent it is contradicted by the ADA.

51. Plaintiff has incurred attorney's fees in opposing this ongoing violation of her rights.

52. Plaintiff has suffered emotional pain and distress from the wrongful actions taken towards her herein including shock, frustration, anger, and outrage.

53. Plaintiff is entitled to a permanent injunction, preventing the Defendants from continuing to violate her rights under the Rehabilitation Act.

## COUNT 3 – EQUAL PROTECTION
### *42 USC § 1983*

54. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

55. Under 42 USC § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

56. Defendants ENNIS CENTER, NEITMAN, CURTIS, and MILLER were each individuals acting under the color of law by evaluating and acting upon Plaintiff's application for a foster care license.

57. Defendants ENNIS CENTER, NEITMAN and CURTIS denied Plaintiff's right to equal protection of the laws by denying her access to the foster care licensing system by reason of her disability.

58. Defendant MILLER, acting on the behalf of the State of Michigan, accepted Defendants ENNIS CENTER, NEITMAN, and CURTIS'S recommendation to deny her access to the licensing system by reason of her disability.

59. Plaintiff's rights have been deprived by reason of a policy of the Defendants STATE OF MICHIGAN and MI DHHS because, as described herein, Michigan's statute, MCL 722.115(3), and MI DHHS's enabling regulations, Rules 9201(h) and 9202(b), impermissibly and irrationally excludes persons with disabilities from participation in the State's foster care program.

60. Plaintiff has suffered, and will continue to suffer, denial of her right to equal protection due to the application of the State of Michigan's unconstitutional statutory and regulatory scheme.

61. Plaintiff has incurred attorney's fees in opposing this ongoing violation of her rights.

62. Plaintiff has suffered emotional pain and distress from the wrongful actions taken towards her herein including shock, frustration, anger, and outrage.

63. Plaintiff is entitled to a permanent injunction, preventing the Defendants from continuing to violate her rights under the Rehabilitation Act.

64. Plaintiff is also entitled to an award of punitive damages as against Defendants ENNIS CENTER, NEITMAN, CURTIS, and MILLER due to their willful and malicious violation of her rights.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1. DECLARATORY RELIEF that the Michigan Child Care Organizations Act, MCL 722.111 *et seq,* and Administrative Rules passed in accordance with same, to the extent they preclude persons with disabilities from participation in the State's foster care licensing program by reason of their disability, without consideration of the ameliorative effects of adaptive aids, are INVALID and unenforceable as a violation of the Americans with Disabilities Act, the Rehabilitation Act, and the Equal Protection Clause;

2. PERMANENT INJUNCTION from future violations of Plaintiffs' rights by continuing to exclude her from access to the Michigan foster care licensing system by reason of her disability;

3. COMPENSATORY DAMAGES resulting from the emotional pain and distress she has suffered as a result of Defendants' unlawful conduct;

4. PUNITIVE DAMAGES commensurate with the willful and wanton violation of her rights;

5. ATTORNEY'S FEES, in an amount determined reasonable by the Court, so wrongfully incurred in order to remedy the violation of her rights described herein, pursuant to the various statutes identified herein;

6. Pre and post judgment interest at the appropriate statutory rate; and

7. Such other relief as this Court may deem just and appropriate in law or in equity.

**PLAINTIFF DEMANDS A JURY**

Respectfully Submitted,

Dated: 9/ 23 / 2021

   /s/ Collin H. Nyeholt   
Collin H. Nyeholt,
Attorney for the Plaintiff